UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SABRINA JOHNKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:17-CV-212-PLR-DCP |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's pro se Motion for Summary Judgment and Memorandum in Support [Doc. 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14]. Sabrina Johnkins ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion, and **GRANT** the Commissioner's motion.

**I.   PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on September 9, 2012. [Tr. 194-209]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 101]. A hearing was held on January 12, 2016. [Tr. 28-47]. On March 28, 2016, the

ALJ found that Plaintiff was not disabled. [Tr. 13-21]. The Appeals Council denied Plaintiff's request for review on March 23, 2017 [Tr. 1-4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 15, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since September 19, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: osteoarthritis, possible mild carpal tunnel syndrome, hearing loss, vestibular system disorders, and other disorders of the ear (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant must be able to alternate between sitting and standing at 30 minute to one hour intervals. She is limited to performing work in a non-hazardous environment, to include no climbing ladders, ropes, or scaffolds, no climbing, no crawling, and occasional climbing ramps and stairs, occasionally balancing, stooping, kneeling and crouching. Finally, the claimant

2

is limited to work where communication with others occurs no more than occasionally.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 15, 1972 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 19, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 15-21].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

4

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

5

## V. ANALYSIS

Liberally construing Plaintiff's brief, the Court finds that Plaintiff sets forth three main allegations of error committed by the ALJ. First, Plaintiff argues that the ALJ failed to properly assess Plaintiff's obesity and the functional effects caused by her weight. [Doc. 12 at 10]. Second, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination, because the ALJ failed to consider all the medical evidence of record and erred in assessing the credibility of Plaintiff's subjective allegations. [*Id.* at 7-8, 10]. Finally, Plaintiff maintains that vocational expert ("VE") testimony contradicts the ALJ's step five finding that other work exists in the national economy that Plaintiff is capable of performing. [*Id.* at 7, 10]. The Court will address each allegation of error in turn.

### A. Obesity

Plaintiff submits that the medical evidence establishes that she is morbidly obese with a body mass index ("BMI") of 40, and that the ALJ failed to properly consider how her weight impacts her impairments and RFC. [Doc 12 at 9-10].

Although there is no "listed impairment" for obesity, Social Security Ruling 02-1p instructs adjudicators to consider the effects obesity may have on a disability claimant throughout the sequential evaluation. 2002 WL 34686281, at *4-7 (Sept. 12, 2002). At step two, obesity will be considered "a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *4. Importantly, "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment." *Id.* At step three, an adjudicator may "find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." *Id.* at *5. Obesity by itself may also be found to be

6

"medically equivalent to a listed impairment." *Id.* With regard to a claimant's RFC, the adjudicator will consider the effects of obesity, both singularly and in combination with other impairments, to determine whether the condition may diminish the claimant's work capacity. *Id.* at *6. While the ruling requires an ALJ to take into consideration the effects obesity may have on a disability claimant, "[i]t is a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006).

In this case, the Court observes that the ALJ did not explicitly discuss Plaintiff's obesity. [Tr. 15-19]. Nonetheless, the Court finds the ALJ's failure to consider obesity is not fatal to his decision. While medical records indicate that Plaintiff is obese [*see e.g.*, Tr. 714, 920], Plaintiff has not cited to any evidence that supports a finding that her obesity was severe, met (in combination with another impairment) or medically equaled a listing, or affected her ability to perform work-related activities. Plaintiff did not list obesity as a medical condition in connection with her initial application for benefits [Tr. 224] but later complained at the reconsideration level of the agency's review that obesity kept her from working [Tr. 100]. However, she did not testify before the ALJ that obesity was a condition that affected her ability to work [Tr. 32-40, 43-45]. Beyond treatment notes simply recounting Plaintiff's weight, BMI, or a diagnosis of obesity, the nature and severity of Plaintiff's obesity is not addressed. Furthermore, no medical source of record opined that Plaintiff's weight produced functional limitations.

Accordingly, based on the lack of record evidence, the Court finds that the ALJ's failure to discuss Plaintiff's obesity does not constitute reversible error. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (rejecting claimant's "argument that the ALJ erred in failing to consider his obesity in assessing his RFC" because "[a]lthough his treating doctors noted that [the claimant]

7

was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions.").

### B. RFC Determination

Plaintiff also contends that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ failed to consider "all medical information" and wrongly characterized Plaintiff's daily routine in assessing her credibility. [Doc. 12 at 10].

As noted above, a claimant's RFC is assessed between steps three and four of the sequential evaluation and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations, §§ 404.1545(a)(1) and 416.945(a)(1), not what "she does and does not suffer from." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). "[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the [ALJ] must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996). In doing so, the ALJ must consider "the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.* at 3.

Here, in assessing Plaintiff's RFC, the ALJ observed that Plaintiff complained of pain in her neck, back, shoulders, and lower extremities; symptoms associated wither vertigo, including dizziness, difficulty balancing, vomiting, and sensitivity to light and noise; ringing in her ear; and

8

tingling, numbness, and swelling in her hands. [Tr. 17]. Finding that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms," the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence" of record for several reasons. [*Id.*]. The Court finds that substantial evidence supports the ALJ's determination.

Citing to objective medical evidence, the ALJ first considered Plaintiff's history of neck, back, and lower leg pain. [Tr. 17-18]. The ALJ noted that imaging results failed to substantiate the degree of pain alleged by Plaintiff, including "normal" cervical and thoracic x-rays from December 2014 [Tr. 17, 427]; an April 2015 lumbar MRI showing mild degenerative changes and no evidence of appreciable disc herniation or bulges, spinal stenosis, or discrete nerve root impingement [Tr. 17, 462-63]; and a July 2015 thoracic MRI showing small central disc herniation that mildly flattened the anterior aspect of the thecal sac with no cord signal abnormality [Tr. 17, 915]. Examination findings likewise conflicted with the severity of pain alleged by Plaintiff as she demonstrated unremarkable cervical range of motion during physical therapy in March 2015 [Tr. 17, 507]; inspection of her lumbar spine in July 2015 was "[n]ormal to inspection" with only mild low back pain on extension and flexion [Tr. 17, 714]; and during a June 2015 neurological consultation, Plaintiff exhibited full strength in her upper and lower extremities, as well as normal reflexes and sensation. [Tr. 18, 914]. The Court observes that "[o]bjective medical evidence . . . obtained from the application of medically acceptable clinical and laboratory diagnostic techniques . . . is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [her] ability to work." 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2). The ALJ additionally noted that despite Plaintiff's complaints of worsening back pain during her neurological

9

consultation, she declined undergoing more aggressive forms of treatment [Tr. 18, 913], a fact the ALJ permissibly considered in assessing the severity of Plaintiff's pain. *See McKenzie v. Comm'r of Soc. Sec.*, No. 99 3400, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. 2000) (unpublished table decision) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment.").

Second, the ALJ addressed Plaintiff's medical history pertaining to her right knee and shoulder. [Tr. 18]. As to Plaintiff's knee, the ALJ considered Plaintiff's March 2013 right knee arthroscopic surgery. [Tr. 18, 331]. Although Plaintiff continued to complain of pain six weeks post-operative, the ALJ observed that Plaintiff had not yet followed through with recommended physical therapy. [Tr. 18, 350]. On examination, Plaintiff exhibited no swelling, tenderness or instability, and demonstrated appropriate range of motion. [Tr. 350]. The ALJ also noted that an August 2014 MRI of Plaintiff's right knee revealed that her medial and lateral menisci were intact with no tears, and despite arthritic changes, only "mild chondromalacia in the tibiofemoral joint diffusely" was present. [Tr. 18, 828]. With regard to her right shoulder pain, the ALJ noted that a February 2014 MRI demonstrated "moderate hypertrophic osteoarthritis of the right acromioclavicular joint with mild mass effect upon the musculotendinous junction of the supraspinatus." [Tr. 18, 387). However, Plaintiff reported that physical therapy improved her pain. [Tr. 981].

The ALJ also considered Plaintiff's symptoms associated with vertigo. [Tr. 18]. In July 2013, April 2014, and February 2015, Plaintiff presented to the emergency room with complaints of vomiting and dizziness. [Tr. 18, 677, 684, 690]. Treatment notes reveal, however, that Plaintiff had "gotten significantly better" [Tr. 300] and her "symptoms . . . markedly improved after treatment" [Tr. 685] following her July 2013 and April 2014 emergency room visits. [Tr. 18].

When Plaintiff sought treatment in February 2015, it was noted that Plaintiff had "not recently seen a physician" for her complaints of vertigo. [Tr. 677]. The ALJ reasonably concluded that if Plaintiff's vertigo was as severe as she alleged, she would have sought treatment like she had in the past. [Tr. 18]; *see Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. Feb. 3, 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.").

In addition to the objective medical evidence of record, the ALJ also considered Plaintiff's daily activities. [Tr. 19]. A claimant's reported activities of daily living is one of several relevant factors an ALJ may properly consider in assessing the nature and severity of a claimant's impairment(s). 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Here, citing to a "Function Report" completed by Plaintiff, the ALJ observed that despite Plaintiff's reported symptoms, she remained capable of assisting with her daughter's personal needs and was her daughter's primary caretaker; Plaintiff was able to cook, do laundry, and wash dishes "some of the time;" she is able to drive, but she does not drive alone; she is able to grocery shop at least twice per month; and she is capable of handling her own finances. [Tr. 19, 251, 253].

Finally, the ALJ considered the opinions of the nonexamining state agency physicians who reviewed the evidence of record at the initial and reconsideration level of the agency's review. [Tr. 19, 56-57, 81-83]. Plaintiff argues that she was "not evaluated by SSA doctors" and therefore, they are unable to opine on her functional abilities. [Doc. 12 at 10]. But the ALJ must consider every medical opinion of record regardless of the opinion's source. 20 C.F.R. §§ 404.1527(b) and 416.927(b). With specific regard to nonexamining state agency physicians—that is, "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical

11

or other opinion in your case," 20 C.F.C. §§ 404.1502 and 416.902—the weight their opinions deserve is "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Although an ALJ is not bound by their opinions, nonexamining state agency physicians are highly qualified medical specialists who are also experts in social security disability evaluation, and therefore, their opinions must be considered. 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i).

At the initial level of the agency's review on December 19, 2013, Stephen Burge, M.D., opined that Plaintiff could perform the following work-related activities within an eight-hour workday: Plaintiff could lift or carry up to 50 pounds occasionally and 25 pounds frequently; she could stand and/or walk for six hours and sit for six hours; she had unlimited ability to push or pull within the foregoing weight restrictions; she could frequently climb, crouch, and crawl, and she could balance or stoop without limitation; and she had no manipulative, visual, communicative, or environmental limitations. [Tr. 56-57]. At the reconsideration level on April 4, 2014, Thomas Thrush, M.D., opined slightly more restrictive limitations due to Plaintiff's vertigo and shoulder pain by assessing the following limitations: Plaintiff could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; she could occasionally balance, kneel, and crouch but never crawl; she had limited ability to reach in all directions, including overhead; and she must avoid exposure to noise and hazardous equipment. [Tr. 81-83].

The ALJ assigned "great weight" to the state agency physicians' opinions in so far as the ALJ incorporated the more restrictive nonexertional and environmental limitations opined by Dr. Thrush into Plaintiff's RFC. [Tr. 19]. The ALJ explained that Dr. Thrush's limitations in this

12

regard were consistent with the evidence of record as discussed above, including Plaintiff's imaging results which demonstrated that Plaintiff's impairments were not as severe as she alleged. [*Id.*]. However, as to the physicians' lifting and carrying restrictions, the ALJ only assigned "some weight" to this portion of their opinions. [*Id.*]. The ALJ concluded that the medial evidence, as well as Plaintiff's subjective allegations, was more consistent with the lifting and carrying restrictions of light work[1] rather than the heavier restrictions opined by the physicians. [*Id.*].

In sum, based on the ALJ's thorough discussion of the medical and non-medical evidence, with supporting citation to the record, the Court finds that substantial evidence supports the ALJ's RFC determination. Although Plaintiff contends that the ALJ failed to consider all the medical evidence, Plaintiff has not cited to any specific medical record, or finding therein, that the ALJ overlooked. Furthermore, Plaintiff has not demonstrated how the ALJ's alleged failure to comment on some of the evidence undermines the ALJ's decision. "[A]n ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Rather, "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951).

In this case, Plaintiff generally list diagnoses found throughout the record, including mild carpal tunnel, hearing impairment, degenerative disc disease, chondromalacia of the right knee, osteoarthritis of the knees, neck, shoulders, and hips, joint space narrowing of the hips, high blood pressure and cholesterol, chronic intercystrial testis [*sic*], irritable bowel syndrome, reflux, and

---

[1] "Light work" includes lifting no more than 20 pounds frequently or carrying up to 10 pounds. 20 C.F.R. §§ 404.1527(b) and 416.967(b).

13

obesity, as evidence that she is disabled and that the ALJ must have erred in assessing her impairments. [Doc, 12 at 7-9]. But the mere diagnosis of a condition says nothing about the severity of the condition. *Higgs v. Brown*, 880 F.2d 860, 863 (6th Cir. 1988). Moreover, Plaintiff has not demonstrated how any of the limitations incorporated into her RFC fail to accommodate the functional effects, if any, of the diagnoses she cites. Accordingly, Plaintiff has not cited, and the Court has not found, that the ALJ's RFC determination is outside the "zone of choices" offered by the evidence.

Therefore, the Court finds Plaintiff's second allegation of error is not well taken.

### C. Step Five – Other Work

Plaintiff lastly contends that substantial evidence does not support the ALJ's finding that other works exists in the national economy that Plaintiff can perform. [Doc. 12 at 7, 10-11].

During the administrative hearing, the ALJ asked the VE whether worked existed in the national economy for a hypothetical individual the same age, vocational factors, and RFC as Plaintiff. [Tr. 40-41]. The VE confirmed that work existed in the national economy for such an individual, including the jobs of bench assembler, sorter, and marker. [Tr. 42]. In the disability determination, the ALJ relied on the VE's testimony to conclude that work existed in the national economy that Plaintiff could perform. [Tr. 20-21].

At step five, the Commissioner has the burden of proving "that the claimant retains the residual functional capacity to perform 'substantial gainful work which exists in the national economy.'" *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)). Generally, the Commissioner may meet her burden by applying the regulation's medical-vocational guidelines ("the grid"), which indicates whether a claimant is "'disabled' or 'not disabled' based on the claimant's age and education and

14

on whether the claimant has transferable work skills." *Wilson*, 378 F.3d at 548 (6th Cir. 2004). However, if a claimant suffers from non-exertional limitations, or she cannot perform substantially all of the exertional demands of a job at a given exertional level, the grid provides only a framework for the Commissioner's decision, and she must utilize other evidence, such as testimony from a VE, to determine whether the claimant can perform other work in the national economy given the claimant's RFC. *Id.* (citations omitted).

Plaintiff contends that she cannot perform her past work as a machine operator and that it was error for the ALJ to conclude otherwise. [Doc. 12 at 7]. But the ALJ did not find that Plaintiff could return to her past work as a machine operator. [Tr. 19]. Rather, the ALJ concluded that there were other jobs—bench assembler, sorter, and marker—that existed in significant numbers in the national economy that Plaintiff could perform based on VE testimony. [Tr. 20-21].

Plaintiff also argues she cannot work because the VE testified that no jobs existed for an individual who would be out of work one to two days per month due to vertigo, would need to lie down two to three hours a day, or was unable to perform repetitive hand motions due to carpal tunnel. [Doc. 12 at 10-11]. While the VE confirmed that these limitations would foreclose the availability of jobs [Tr. 43, 45-46], the ALJ did not find these limitations to be consistent with the objective record. [Tr. 16-19]. Accordingly, the ALJ was not required to rely on the VE's testimony concerning limitations that were not found credible. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987) ("[T]he ALJ did not err in declining to accept the vocational expert's testimony that there are no available jobs, as it was based on the assumption that plaintiff's testimony was entirely credible."). Instead, the ALJ relied on the VE's testimony that work existed for an individual with the same limitations as those incorporated into Plaintiff's RFC. [Tr. 20-21]; *see Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

15

1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). Because the hypothetical question presented to the VE accurately represented Plaintiff's RFC, the Court finds that substantial evidence supports the ALJ's step five finding that Plaintiff can perform other work in the national economy. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[2] Plaintiff's Motion for Summary Judgment [**Doc. 12**] be **DENIED** and the Commissioner's Motion for Summary Judgment [**Doc. 13**] be **GRANTED**.

Respectfully Submitted,

Debra C. Poplin
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).